Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning and welcome to this session, a continued session of our panel which we held in the last week of September. We have two cases this morning. The first case is number 22-10949, United States v. Diana Robinson. And Ms. Howard, we'll start with you. Thank you, your honor, and may it please the court. And before you start, Ms. Howard, I know that you were court appointed, so we want to thank you for your service to the court and to Ms. Robinson. We really do appreciate it. Thank you, your honor. This is a case about the limits of a court's authority to punish for contempt. The district court here exceeded that authority in two ways. First, by finding Ms. Robinson bound by the injunction and thus guilty of criminal contempt. And second, by imposing supervised release for that contempt conviction. In light of the court's recent interrogatory on the injunction, I'll start there. Can I ask you, Ms. Robinson, Ms. Howard, just one quick question before we get going, just so I understand sort of the metastructure of the standard of review. I mean, so you agree that we are reviewing for sufficiency of the evidence? Yes, your honor. A clear error is not the standard. Sufficiency of the evidence is despite the fact that we've got a bench trial with some findings. Is that right? I think that's right, your honor. I mean, here, I think it's a little bit different because the fact findings. And so when the district court made those findings, for example, about the way in which Ms. Robinson was bound by the injunction, and my position is that it implicitly rejected the other ways, right? Because the court was aware of the law in the various ways. But even if the court did just a straight sufficiency of the evidence standard, the evidence would still be insufficient. The reason I ask is just to make clear sort of the disposition here, seems to me, is sort of just like a toggle. It's like a thumbs up, thumbs down. We don't really have the luxury of remanding. Like if we think sort of a fact finding has gone sideways, we don't have the luxury of remanding. It's either that the evidence was sufficient or it wasn't. That's correct, your honor. Okay. I just wanted to make sure. Thank you so much for clarifying that. I didn't mean to get you off. And in doing that, Ms. Howard, you agree, I would think that in terms of historical fact finding, that's reviewed for clear error. Well, I think it's a little bit unique here because we do have the fact finding by the district court. And the cases say we review that for clear error. But of course, as Judge Newsom was just saying, this is a review of the sufficiency of the evidence. So if there is sufficient evidence that the district court didn't make a particular fact finding on, then I would agree that the court could rely on it. I agree with you. But for example, if the district court said, Ms. Robinson did X on a certain date, that specific historical finding is reviewed for clear error in and of itself, right? Correct, your honor. Okay. Go right ahead, please. I'm sorry. Just one more thing. And we'll give you more time if you need it. Just so I understand following up on Judge Jordan's question. So it's like non-core guilt-related facts we might review for clear error, but with respect to sufficiency of the evidence with respect to guilt, that's the sort of thumbs up, thumbs down that I was talking about. I think that what it ultimately comes down to is whether there is sufficient evidence. And I think as a practical matter, the court starts by reviewing the district court's fact findings and to Judge Jordan's point, if the court made a specific historical fact finding within there, that's reviewed for clear error. But to be candid, if the court did clearly error, then that doesn't necessarily mean that there's not sufficient evidence. So then you would, I guess, then go to what your honor describes the thumbs up, thumbs down, despite the clear error, do we have to affirm this conviction because there's sufficient evidence? And our position is there's not sufficient evidence. Super. Okay. Thank you. I'm sorry. Now I have one more question. Okay. So what if, let me ask you, since we've got these facts that are found, these sort of historical facts that are found, are we required to give the thumbs up or thumbs down on the theory that the district court found contempt under? Or is it something that we're considering in the alternative, whether the facts is set forth, are sufficient to establish contempt under a different theory? Well, so our first position is that, you know, the district court, you know, found that Ms. Robinson was in contempt under a specific theory. That was the theory that was prosecuted. That was the theory that was litigated. That was what the district court found in doing that because the district court was the fact finder. It knew the law, implicitly rejected those other findings. And so our first position is that you should follow and decide whether the evidence was sufficient under the specific theory that the district court applied. That being said, where the court to look at whether there was any other theory to convict Ms. Robinson of criminal contempt, we still contend the evidence would be insufficient. Okay. And, you know, I'm not opining on whether it would or wouldn't be, but just for purposes of establishing the underlying framework, your position then is, though, that if we found that the evidence were independently sufficient based on the validate the contempt finding, even under a different theory, then that would be okay. If I'm understanding what you asked Judge Rosenbaum, our first position is that the court should only be able to affirm the conviction based on the theory that the district court found, which was prosecuted. But in the alternative, were the court to sort of consider these other theories, and then it would look to see, as Jed Newsom said, thumbs up, thumbs down, is the evidence sufficient under any particular theory to support the elements of criminal contempt? Then the court could look to those other theories and our position is the evidence is insufficient. Okay. I'm sorry. I'm still a little bit confused. I understand you've just described the second position as an alternative. And so what I'm not clear on is whether your can't consider any theories that the district court did not rely on for sufficiency of the evidence on the contempt finding. Is that what your position is? Yes, Your Honor. That's the initial position that the district court had a particular theory that it thought the evidence was sufficient on. As the fact finder, it said that the evidence is sufficient to convict Ms. Robinson based on this particular theory. So that was an implicit rejection of the other theories. And then that's the theory that the fact finder found that she was guilty upon. And that's what her conviction is based upon. I guess, I'm so sorry, but I just want to make sure I understand. Are you, I understand that your position is that you don't think there's enough on the theory that the government pursued and that, or that, you know, the court found. You don't think there's a more fundamental question, which is, do we have the authority to consider whether there's enough evidence under any theory that the evidence would support? Or do we not have that authority? I think here, in the particular scenario where the district court was the fact finder and made fact findings under a specific theory, it's almost like, this is not a precise analogy, but like there was like a special verdict, right? And the district court said, okay, this element is met because of these specific facts. So I don't think the court should, you know, comb the record to find if there is another theory that could support the conviction in the alternative. So I understand you don't think we should, I'm asking whether we can. I'm not saying we would, but I'm just trying to establish what the framework is here. Sure. As I said, I think that the proper thing to do would be to stick with the theory of the district court. But I ultimately, I do think the court could look outside at the different theories to see if the evidence was insufficient, because this is ultimately a sufficiency question. Okay. Thank you. But I guess, and I will give you more time, Ms. Howard, but I thought your response would be to Judge Rosenbaum's question on the second alternative, that you'd run into some pretty difficult due process issues. If you affirm the contempt conviction on a ground that wasn't prosecuted, and that Ms. Robinson wasn't given notice about. That's a great point, Your Honor. And that's absolutely correct. Because, you know, we've been focusing so much in the briefs on the due process issue as to the merits of the injunction, but there's a separate due process issue as to the merits of the contempt. And the Supreme Court has said that in the Zenith radio case, which I think is not cited in our briefs, but is cited by a lot of the cases that we discussed, that a defendant who's charged with contempt must have an opportunity to challenge whether they fall within the bounds of the injunction. And Your Honor makes a very good point and is correct that, you know, Ms. Robinson didn't have the opportunity to challenge that she was bound in that way, and any other way other than what was the theory prosecuted below and what the district court found. All right. Can I ask you just a quick follow-up question to Judge Jordan's question about this due process issue? Before he does, I'm sorry, Kevin. Brian, can you please add four minutes to Howard's time? So is the due process issue, is that unique to bench trials with fact-finding, or would that also apply in just an ordinary jury trial where we have this sort of inkblot of a verdict? Because there, of course, we do just ask, could a hypothetical reasonable jury have concluded? And we don't really, I don't think anyway, maybe we do, you can correct me if I'm wrong, but that's precisely the government's theory of the case. No, but I think if there were, for example, alternative means by which a indictment, like let's say an indictment alleged alternative means, and it picked one means to go and the evidence, you know, that was what was prosecuted, that was the theory that, you know, was presented at trial and the government didn't prove its case, then I don't know that we, that you, the judges on appeal, this court on appeal would go through and try to find, you know, an alternative means by which, although the jury didn't find it, and although it wasn't prosecuted, there's this alternative way to affirm a conviction. But I agree, it's certainly a little less clear when you just have sort of a blanket, you know, yes, guilty without these specific, the specific findings. And that's why I think it's a little more akin to some kind of special verdict or where the fact finder has specifically found specific facts to support the conviction. So are you saying that contempt is just a different kind of charge, I guess, than other other criminal charges would be because of the nature of contempt and the fact that there are maybe more specific notice considerations that we need to account for than you might otherwise need to in a more generalized charge? I mean, I'm just trying to figure out what your position is. Sure, Your Honor. Yeah, I do. I mean, contempt is sui generis. It is unique in certain respects. And one is the notice respect. And because it's about vindicating the authority of the court. And, you know, especially when you're not a party in the original proceedings, there are special considerations that you have to make sure that you have notice of that your of the court's order. But it is ultimately a criminal charge and the elements have to be proven beyond a reasonable doubt. I think the difficulty here as to the theory of why Ms. Robinson might have been bound or how she violated the injunction if she violated it has to do with I almost think of them as like sub elements or sort of like necessary facts that have to be found to prove, you know, some of the elements of contempt. And so to Judge Newsom's point, a lot of times you wouldn't have that in a jury trial, you wouldn't, you know, you would just have sort of a blanket finding that there was a violation. So it's, I think, a combination to Your Honor's point of it being a contempt proceeding, which is sui generis, it's unique, but also that we have these specific fact findings by the fact finder, laying out what the fact finder thought was the sufficient evidence to bind her. All right, so let's finally turn to the merits of your position, which is tell us why you think tell us why you think Ms. Robinson was not bound by the injunction, and to the extent that she might have been bound in some way, the evidence was insufficient to convict her. Thank you, Your Honor. Yes, Ms. Robinson was not a party in the underlying proceedings. There's no dispute about that where the injunction was entered. And as we explained in our brief, she does not fall within any of the three limited exceptions for non parties who the district court had the power to bind. This court asked in its interrogatory, whether it could affirm her conviction, based on the second, or what I'll call sort of a fourth potential theory of liability, where a non party doesn't act in concert with the party doesn't act in concert with the party's agents whose actions we can impute to the party, but acts in concert with another non party, who may be in privity with the party. And, you know, the answer is no, you cannot confer affirm her conviction based on that for at least two reasons. The first is that federal rule of civil procedure 65 D two, which codified the common law and controls who can be bound, contains no such exception. And the second is that even if it did have that exception, and this court found that there was sufficient evidence for Ms. Robinson to fall within that category, there still would be insufficient evidence for this criminal contempt conviction to find, for example, that the order here was clear and unambiguous that it prescribed that particular conduct. And can I ask you just about that generally, so I'll have to, I'll have to confess that as I've thought and rethought and rethought about rule 65, and the scope of this injunction, I'm like a little skeptical of this privity gloss that has been added to the rule. It's it seems to me that when you read rule 65, that it that it targets first, like a core, the parties themselves, and then it's then it builds in sort of concentric circles of peripheries into subsections, one for agents, officers, employees, and then one for those acting in concert or aiding and abetting or whatever. And it just seems a little weird to me that that courts would then take it upon themselves to add like a third sort of fudge factor of privity. Now, having said that, I think lots of courts have done that. I mean, you know, courts, you said, you know, sort of incorporates the common law and courts have assumed that privity sort of like came with when it came to rule 65. And I think that the way that courts have kind of rationalized this, and I'm not sure that it's perfect, but that to the extent that there is a privity gloss, it doesn't really fit within B or C, but it fits within a like parties, basically parties bracket and their privies. And if that's true, then why isn't the theory that Robinson acted in concert with a booed who was a privy of phaser electronics? Why isn't that sufficient? So I would push back respectfully on the idea that privies would fall as sort of a unspoken bracket under subsection a that anytime you see the word parties, you can also see I think the cases I agree are, can be a little unclear about where the privity exception fits within the rule, but I think this court in the ADT case strongly suggested it fits within subsection C that one can be an active concert or participation in two ways, one by aiding and abetting or one by being in privity that is in concert with aligned with the party. And other cases also adopt that position. And in fact, I haven't seen any cases, even ones that don't specifically put privity within subsection C refer to privies as anything other than a non-party exception. It's a non-party exception that depends on the relationship between the party and the non-party. So it is one of those, as your honor described concentric circles, right from the core, because we have to remember that the core principle here, the core concept for equity and due process is that a court only has the power to bind the conduct of the parties that are before it, that has had an opportunity to adjudicate. And we've made these very limited exceptions for those who have a direct relationship with the party who might help the party do the whether because they're an agent. And so we impute their actions to the party or whether because they're so closely aligned and they had such a controlling role in the litigation or from some other special theory of privity that we are going to impute their actions or we're going to hold them liable under the injunction. But what I don't think the rule or the common law permits is to create what your honor just asked about, which is instead of just a direct relationship to the party, sort of a two-level relationship. Now there's no direct connection to that core, that core that your honor mentioned of the party. We have instead a non-party who's acting in concert or aiding and abetting another non-party. And yes, that party may be in privity with the party, but we're now two steps removed from the party. And at common law, the requirement was that the non-party either aid and abet the party or be legally identified with the party. And those limits as Judge Learned Hand said in the Alamite case that really set out the common law rule are far from a formal distinction. We don't want to go beyond them because if we do even, you know, by small steps, he said, by small steps that could really realize the worst fears of those who are critical of the power of a court inequity, right? Of a court who can't just control our pocketbooks, but can control our behavior. And so that's why the limits at equity and due process require that if you're any farther removed from the party, you get your day in court. And that doesn't mean that, that doesn't mean that, you know, a plaintiff is without recourse at all. Of course, if all that needs to be done is that, you know, for example, Taser International could name Ms. Robinson in a lawsuit and give her the opportunity to challenge whether the injunction should apply to her, whether the merits of the injunction should apply. All right. And so let me ask just one more, one follow-up question, because you said that there were sort of two reasons. One was like an interpretation of Rule 65. And the second was, it's really not Rule 65, of course, here that's being enforced in the criminal contempt proceeding. It's the injunction itself. And so is your second point that forget about Rule 65, the injunction here, which largely tracks 65, but sort of like slots in phaser electronics for the word party, basically, that that doesn't provide sufficient notice for criminal purposes that cribbies are sort of folded in? That's correct, Your Honor. And I would point to, so the injunction is that civil document 183, and on pages eight to 10 of that document, right sort of leading up to the exact injunction, the district court is providing some background, and it actually has a section on how non-parties can be liable for the injunction in that order. And it says, you know, a non-party must aid and abet and join defendant or be legally identified with him. And it says, if a non-party is not in legal privity with the party, the non-party must have acted in concert with the party in a scheme to allow the party to continue the activities in violation of the injunction. So in the order itself, the district court is setting up a distinction between a party and a non-party who is legally identified, and then is saying, listen, if you're not legally identified, and you're a non-party, you have to act in concert with the party. I don't, you know, my position is, our position is that that's certainly not clear, definite and unambiguous, that the injunction was going to prohibit not what it just said it was prohibiting, but also a non-party acting in concert with another non-party. And so yes, so for purposes of Section 401, even if Rule 65 could incorporate this theory of liability, there would be insufficient evidence under Section 401 for criminal liability. All right, Ms. Howard, thank you very much. We'll give you your full time for rebuttal.  Ms. Rhodes, good morning. Good morning. May it please the court. In United States Code 18, Section 413, Congress vested the district court here with the authority to vindicate the willful violation of the injunction it had entered forbidding specified activity regarding tasers, trademarks, and patent rights. And the district court properly dispatched that authority here by adjudicating Robinson guilty of criminal content based upon the sufficient evidence that we presented at trial. Rhodes, can I ask you a question based on a hypothetical? So assume that Ms. Robinson, after the injunction was issued, on her own, incorporated a company whose sole purpose was to import the CEW product and sell it in the United States. Would she be guilty of contempt? She does it on her own. She's like, oh, wow, okay, these people have been enjoying whatever, whatever. I'm going to create a company of my own. I'm going to call it, you know, Robinson CEW. And then she does exactly what the enjoined parties had been doing that got them into trouble. But she's doing it on her own with her own company. If I could ask a question, is the situation that, like, for example, here, like she was employed by Phaser Electronics, and then she did this on her own? Is that what you're getting at? She just, she stops doing business with and being a part of Phaser, of the Phaser family of companies. Okay. And she decides, I'm now going to do exactly what these people did that got them into trouble. And she starts dealing with the same people overseas to get the product and sell it in the United States. Would she be guilty of contempt? Um, I don't necessarily think so. But that's not what we had going on in this case. Oh, no, I understand. I understand. And so, so that's my understanding, too, or at least my belief that if that's what she did, she broke out on her own with a brand new company, disassociated from everybody else who was enjoined. Even though she engaged in the same conduct, she would not be violating the injunction. I think that's correct. Okay. Okay. If, if, if that, if you and I are correct in that assumption, don't we need to know a lot more about the corporate and individual relationships that were going on at the time that the injunction was issued? Like, who is this company that was giving out the licensing, the supposed licensing deals? Who was employed by that company? Who owned that company? Who worked for that company? Who authorized that company? To what extent had Phaser Electronics shut down? Don't we need a lot more fact finding to uphold the contempt conviction? In your scenario or in this case? No, in this case? No. Here's why. So tell me what, what did she do that you think violated the injunction? The district court found that going back to the state of affairs when the injunction was entered, that Abood was for all intents and purposes, the owner of Phaser Electronics. And that he, the court also found and the evidence supports that Robinson was an agent and employee of Phaser Electronics. She was at very least an employee. Nobody disputes that because at the very least, she had some administrative duties with regard to Phaser Electronics. And then. Just so I'm clear, at what point in time? She was an employee of Phaser Electronics at the time of the alleged misconduct? She was an employee at the time that the injunction, the injunction was entered. We can start with that. Okay. When did she stop? Did she ever stop being an employee of Phaser Electronics? She didn't stop being an employee or agent of Phaser Electronics until she and Abood figured out another way to circumvent the parameters of the injunction by creating Phaser USA. And the reason why I think that you don't need additional fact finding with regard to this case, Judge Jordan, is because Phaser USA didn't just magically appear. Phaser USA came about a few months after the criminal, I mean, the civil contempt order was entered. And in the interim, Robinson took some very specific steps to bring about the creation of Phaser USA. At the time when she was an agent of Phaser Electronics. She's sending out employee identification notices. She is assisting with the creation of the website for Phaser USA. All of these things are happening in direct contravention of the injunction. Tell me, I'm very confused about this web of companies. So what was Phaser IP's role in all of this? It's my understanding that Phaser IP was the entity that held the licensing for the products that had been enjoined. And that's critical because Robinson in her position, she said she was a member, the evidence was that she was a member of Phaser IP. She was the person who communicate with Phaser USA. I'm sorry, Phaser. She was the person who communicated that the licensing was going to be taken away from Phaser Electronics and given to Phaser USA. So that in and of itself is critical with regard to the willfulness of her participation in, because the injunction said that if you were an employee, an agent, or whomever, or a party, you could not cause other parties to do what the court had enjoined them from doing. And by her doing that, she caused Phaser USA to sell, distribute, at least sell and distribute products that had been enjoined previously. But just so I understand, and tell me if I'm dismissing something, at the time of the allegedly violative conduct, you're not suggesting that she was at that point an agent or employee of Phaser Electronics, are you? I mean, it had been disbanded. It was disbanded because of their conduct. It was disbanded because they took the licensing away. Yeah, I mean, I get that. And there's something, I agree, something here that feels very fishy about the whole thing. But I mean, I guess I'm just thinking Rule 65 and the injunction issued under it here. You know, I mean, there's some form involved. And one of the things is we know that the party named in the injunction was Phaser Electronics. We know then that the injunction for 65 allows, you know, us to kind of like grab up some other people, among them are employees, agents, officers of Phaser Electronics. And if she's not at the time of the violative conduct, one of those things, then I'm just, I mean, I don't think I understand how she's covered at least directly that way. Well, one of the things you have to look at here is that she and Abood caused the, as agents of Phaser Electronics, they caused the creation of Phaser USA. And in and of itself, was that a violation of anything? It is to the extent that the only reason why they created that company was because they wanted to transfer the licenses there so that they could continue to sell the products, which the court had told them that they could not do. But Phaser IP was not subject to the injunction, right? No. But Robinson was. And you and I agreed that if Ms. Robinson created a new company, and started importing CEW into the United States, she wouldn't be violating the injunction, right? Under your scenario, no. But under the facts of this case, yes. The only difference is that she was involved with Mr. Abood in creating a new company, right? No, the only difference is that at the time when the injunction was entered, she was an employee or agent of Phaser Electronics. And they, she and Abood and Phaser Electronics and the other agents and employees were told that they could not directly or indirectly sell or distribute the enjoined products. And what they did was they went about, once the civil contempt order was entered, they said, okay, we know we can't continue to do this through Phaser Electronics. So we're going to be working behind the scenes in Phaser Electronics to create Phaser USA. And then we're going to go on our merry way doing the same thing that we very well know that we are not able to do under the guise of Phaser Electronics. So let me ask you this. I mean, again, I sort of understand the intuition that this whole thing kind of stinks to high heaven, but why is it that we're measuring her employee-ness, so to speak, of Phaser Electronics at the time the injunction was issued instead of at the time that she allegedly violated it? I mean, it seems like that's when she either became a criminal or not, when she engaged in conduct. Well, one of the things we have to focus on is that she needed to have notice. And as an employee of Phaser Electronics, she would have had notice. And then armed with that notice and armed with the knowledge that they could not continue what they were doing in the manner in which they were doing it, with the corporations and the structures that were in place when the court issued the injunction, they set about going a different route and creating something. You could even think of it as that Phaser Electronics, I mean, even though it looks as if Phaser Electronics ceased to exist, Phaser Electronics just sort of like was part of a continuum into Phaser USA in that the same people were involved, Abood, Robinson, Coyne, they, and it was, you look at the manner in which they did this. Phaser Electronics created by somebody who knows nothing about any of this. And the district courts found this much so saying that Mr. French was this that Mr. Benjamin, who was the punitive owner of USA, was just a placeholder. And so, and he was a placeholder for Abood and Robinson was aiding and abetting that placeholder in selling and enjoying products in this case. Sort of like at bottom, and I don't mean to judge. Listen, I understand that the injunction says Phaser Electronics or any of its employees, officers, or agents, but come on. I mean, is your position kind of a come on position? It's sort of a in reality. Yeah. And that's essentially what the district court determined or alluded to in saying that to find anything different would be to subscribe to the whack-a-mole theory of abiding by an injunction whereby if I don't want to abide by the injunction, I just go off armed with the knowledge of what I'm supposed to do and what I'm not supposed to do. I'm just going to go off and create another corporate structure and I'm going to continue to do what I was doing. And the association, the close connection between Abood and Robinson and Phaser, they all had the same interest both before they were enjoined from being involved with these products and after was the same, which was to infringe upon the patent and the trademark rights of Phaser International. Counsel, I don't know that we're actually, I don't know whether we'll get there or not, but in case we do get there, I want to ask you about the sentencing aspect of this and specifically why it is that 18 USC section 401 doesn't answer the question open and shut in its text, whether supervised release can be imposed as a punishment. That, of course, is the provision that says that a court of the United States shall have power to punish by fine or imprisonment or both contempt of court. Why doesn't that answer the question when it seems like it's the more specific or the most specific of the different punishment statutes as they relate to contempt of court? Well, we believe based upon this court's recognition in Cone with regard to the flexibility, as we've said, this is, as Ms. Howard has said, this is a unique kind of an offense being that it's sui generis. And in recognition of that, this court has said in Cone that the flexibility, that there needs to be an ultimate flexibility with regard to the sentence imposed in a case. And that doesn't mean that the discretion or the flexibility is unbridled, obviously, because we have certain constitutional and statutory parameters that would prevent the absurd results that have been discussed in this case. For example, that somebody who even in this case would have been found to have violated an injunction would be subject to a supervised term of life imprisonment. There are too many structures in our criminal justice system that would prohibit that, including the Eighth Amendment protections against cruel and unusual punishment, the requirement in 3553A that the sentence be sufficient but not greater than necessary to comply with the statutory purposes of sentencing, and this court's ultimate appellate review. Therefore, and in addition to which, in Paulino, this court stated, and another thing I wanted to say was that after this court determined that contempt is sui generis and therefore wasn't an automatically class A felony in Cone, it also said that in certain instances an appropriate sentence could include a term of supervised release. But that was really dicta. I mean, wasn't that dicta? Yeah. Even though it is, it does speak to a consideration of whether supervised release could apply at all. Maybe, but were we analyzing 18 U.S.C. section 401 when we made that statement? Well, not there, but that was a consideration directly in the Paulino decision, and this court said that the supervised release statute does not forbid a court from imposing a term of supervised release. Well, so let me just sort of follow on Judge Rosenbaum's question. So, you know, she's asked you about 401. What about, you know, the topic addressed in the sui generis thing? It's neither a felony nor a misdemeanor, and 3583A obviously only allows for supervised release for something that's either a felony or a misdemeanor. I don't really understand how Cone allows us to do it under that statute. Well, we would have to, of course, agree that 3583A speaks to imprisonment for felonies and misdemeanors. Well, I mean, 3583A, if I'm understanding it correctly, is about supervised release. It's what authorizes supervised release specifically, and it says the court in imposing a sentence of term of imprisonment for a felony or a misdemeanor may include dot dot dot supervised release. Yes. So, I just don't think I understand. Well, we would submit that notwithstanding the strict parameters of 3583A, that supervised release could be an appropriate component of a sentence in this unique type of cases. So, I mean, just, I guess, on what basis do we get to ignore the language of the statute and its construction in Cone to, like, make it happen here, to make supervised release happen here? Well, the sentencing guidelines speak of supervised release being available for whenever imprisonment is imposed. 5D1.1 says that. And the sentencing commission is an arm of the Congress. One would presume, well, I don't think you have to presume, you know, the guidelines and the commentary are subject to congressional comment or review, just like the statutes. And we would submit that that does lend itself to the view that supervised release could be one of the components of an appropriate sentence for a contempt conviction under 4013 or section 401 period. All right, Ms. Rhodes, we've taken you way beyond your time, but thank you very much for answering our questions. Thank you very much. Howard, you've got four minutes of rebuttal time. Thank you, Your Honor. Just briefly to start with the injunction. Well, I certainly understand the come on position that was discussed when Ms. Rhodes was talking. You know, the fact of the general principle at equity and the general principle of due process that a court only has the power to bind the conduct of a party and that we have these very limited exceptions for nonparties and to determine whether Ms. Robinson falls within one of those exceptions doesn't require, you know, asking if it feels good, doesn't require asking if something is fishy. You know, thank goodness people aren't subject to criminal penalties for that, right? It requires a look at her relationship between her and the party that was actually bound by the injunction phaser electronics and to see if there is that sufficiently close relationship that falls within one of those limited exceptions that due process and principles of equity will let a court prescribe her conduct. And as we explained in our briefs and discussed earlier, there's simply she does not fall within any of those categories. And it's not a game of whack-a-mole respectfully that, this is the rule and she doesn't fall within it. It would actually be an extension of the rule, an extension of the doctrine to try to capture her within it. And that is something that would threaten to take the power of the court beyond what it has at equity, beyond what rule 65 certainly contemplates and provides. I'm sorry, let me just ask you a question about something that Judge Newsom was asking you about. If we found that the privity, I guess the privity doctrine applied and we also found that privity was sort of the same thing as category one, that is parties. What is your argument then that your client, there wasn't enough evidence to find that privity falls within subsection A? I agree there would be perhaps a harder time showing that she wouldn't perhaps be captured as was articulated in the interrogatory as one who's aiding and abetting someone who's in privity if privity is captured under subsection A. But the evidence would still be insufficient because again, we're here for a 401 conviction. And that requires not just that Ms. Robinson have violated the injunction, but that there be a prescribed this particular conduct. And we've certainly been talking about this for a long time. I don't see how any reasonable fact finder could find that the injunction here was clear, definite and unambiguous about that particular conduct, especially considering the sort of preamble that the district court put before the injunction sort of specifically disaggregating a party and one who's legally identified and not conflating them as the same. And that she willfully violated it, which requires that she knows that the injunction covered that conduct and that she knows that what she was doing violated that conduct. And there's not sufficient evidence for that either, either that she knew that the injunction covered that conduct or even that she knew that Mr. Abood, this court may find that there's sufficient evidence that he's in privity, but there's not sufficient evidence that she knew that he was in privity or even understood what that concept was. And so then just very briefly, I only have a few seconds left to touch on the sentencing issue. I think your honors hit the nail on the head. Our position is there's simply no authority for the court to impose supervised release for contempt. There's no authority under section 3583A because that provides courts the authority to impose supervised release for misdemeanors and felonies. And as this court held in Cone, criminal contempt is neither. Although the sentencing commission may have shorthanded 3583 to say any offense, that's not persuasive considering that Congress in the same statutory sections did refer to any offense. So for example, Congress gave courts the power to impose imprisonment for any offense, not for felonies and misdemeanors. Congress gave courts the power to impose probation for any offense. So there is a distinction between any offense and misdemeanors and felonies. And section 401 also, as Judge Rosenbaum noted, provides only that courts have the power to impose fine, imprisonment, or both to the exclusion of any other type of punishment. Thank you. All right. Thank you both very much.